Good afternoon. Could I ask the clerk to call the case, please? 324-0568, Tiara Thomas-Appley v. Cornerstone Services, Inc., appellant. Counsel, please be advised that Justice Brennan had a death in his family and had to travel to Europe, and so he will not be here this afternoon. However, he is well aware of the proceedings and it's intended his, it's going to be his practice to listen to the oral arguments remotely, and so we will be issuing our opinion once he's had an opportunity to listen to the oral arguments. So he does intend to actively participate with discussions with Justice Bertani and with me after the arguments. So please keep him as well as his family in your thoughts, if you would be so kind. Okay, this afternoon, we're going to be going ahead. Appellant, you have your time at this time. Thank you. Thank you, Your Honor, and my condolences to Justice Brennan. May it please the court. My name is Paul Yovannik, and I am counsel of record for Defendant Appellant Cornerstone Services. This Rule 308 appeal asks the court to interpret the government contractor exemption set forth in Section 25E of the Illinois Biometric Information Privacy Act. Two legal questions are certified. First, whether the exemption applies only to private entities that work exclusively for government. And second, if not, what the phrase when working for means within Section 25E. Cornerstone's position is grounded in the statutory text and the fundamental canons of construction. Exclusivity is not required. Nothing in Section 25E says only or exclusively. And the phrase when working for is temporal and status-based. It asks whether at or during the time in question the entity is working as a contractor to a state agency or local unit of government. It does not ask what specific tasks a particular employee was performing. This reading gives full effect to the language the General Assembly enacted, preserves the structure of Section 25's exemptions, and avoids the practical irrationalities that follow from a task-by-task or employee-by-employee approach. Now under Rule 308, the court answers questions of law. Statutory interpretation is de novo, and the principal aim is to give effect to legislative intent as expressed in the statutory language. Where the text is clear, courts apply it as written. They do not rewrite it, add limitations, or smuggle in conditions the legislature chose not to include. That discipline guides both certified questions here today. Now Section 25E states that nothing in this act shall be construed to apply to a contractor, subcontractor, or agent of a state agency or local unit of government when working for that state agency or local unit of government. The subject of that sentence is the contractor. The clause when working for operates as a temporal limiter, which is at or during the period in which the entity is working as a government contractor. BIPA, quote, shall not be construed to apply, unquote, to that entity. Two critical results follow from the words the legislature chose. First, there's no exclusivity requirement that appears in the statute. Had the legislature intended to confine the exemption to entities that work only for government, it would have done so, but it didn't. Reading exclusively into the statute would be an impermissible judicial addition. Second, the word when has real effect in this section. When addresses time, not task. It distinguishes periods during which the entity is working as a government contractor from periods when it is not. This preserves the meaning of every word honoring anti-surplusage principles. In short, the statute speaks to the status of the entity in time, not to the minute-by-minute activities of its workforce. And the first district's decision in Enriquez v. Navy Pier confirms this reading. There, the court articulated a three-part test. Is the entity a contractor of a unit of government? And was it working for that unit at the time of the collection or dissemination of biometric information? Now, while Navy Pier worked exclusively as a state contractor in that case, the trial court's dismissal and the appellate court's affirmation was not based on that fact. Exclusivity was a fact about Navy Pier, not a rule of decision. The test in Enriquez doesn't mention exclusivity. It turns on status at the time. And we saw this also play out in the Cook County trial court's decision in Miranda v. Pexco, which further supports the reading. And there, the court called it a temporal question. It asked, is the defendant a government contractor during the same period the plaintiff worked and the claims arose? And answering the yes, the court granted dismissal. And while Miranda is not binding on this court, it is nonetheless consistent with the text of the statute and holding in Enriquez. May I ask for a second? If I may ask for a second, counsel? Sure. Under your theory, a employer with a de minimis government contract of some kind would be totally exempt. It's just so I'm clear on what your theory is. Yeah, yeah. So you're right. So I think if I understand your question, it's, you know, if there's like one contract, is there still an exemption, a small contract, whatever it might be? Is that the question? Yes. Yes, it is. Okay. And so the answer is, yes, there would still be an exemption because it's during the time it is a private entity is a contractor. It says nothing shall be construed to apply, but there are guardrails, if I may add, that prohibit, I think, what maybe your concern might be is of abuse of that kind of interpretation. One, the entity must actually be a contractor working for the government. So real contracts, real performance, not pretext. The second part is, if the government work ends, the exemption ends. So that's the temporal check built into our interpretation or what we're asking for is when. And so and we've actually seen this play out, this broad interpretation and other subsections of Section 25, which contains a cluster of express carve outs. And the courts have repeatedly enforced them as written, even we're doing so with narrow BIPAs reach. And the one that is clear is the financial institution exemption set forth under Section 25C, which provides that nothing in this act shall be deemed to apply to any in any manner to a financial institution or an affiliate of a financial institution that is subject to Title 5 of the Graham Leach Bliley Act of 1999. Courts applying Section 25C have treated it as a broad categorical exemption key to an entity's regulatory status, not to the purpose of the specific biometric activity at issue. And that approach mirrors how Section 25E should operate. The trigger is the status in time, not the task by task function. And in the briefs, an appellee's narrower theories pivot from the contractor to what an employee is doing or whether a particular project or revenue stream is tied to a governmental task. Those theories, though, founder on the text of the statute for three reasons. The first one, they change the statute subject. Section 25E exempts the contractor. It does not say nothing in this act shall be construed to apply to the employee when working on government assignments. Tying the exemption to fluctuating tasks swaps the statute's focus from the entity to the individual worker, a move the text does not support. Second, they collapse the word when into an activity qualifier, which it is not. When focuses on time, not function. A construction that turns when into while performing a government-related task smuggles a functional limitation that the legislature did not write. And third, the theories create an unmanageable process. Under a task-based review, the same organization could be exempt at 9 a.m., non-exempt at 10 a.m., and exempt again at 10.30 a.m., depending on which case. Could they just comply with the act 24-7? Sure, they could, but we're looking at statutory language, which the legislature enacted. And so with kind of this unmanageable theory, these theories of focusing on or even dividing the workforce, nothing in BIPA suggests that the General Assembly intended a rule so choppy, uncertain, and resource-intensive to administer. And as we've known from the case law, interpretations that yield absurd, inconvenient, or unjust consequences are disfavored, especially where ordinary textual meaning provides a clear, workable rule. And so the result of all of this is a convergence on three interpretive principles. The first one is that the text governs. When statutory language is clear, the court must apply as written, and we saw that held in Cothran v. Whitecastle, another BIPA decision. Second, there can be no judicial add-ons. Courts may not depart from the law's terms by reading into it exemptions, limitations, or conditions the legislature did not express, and that is a quote from Rosenbach v. Sixth Flag, which was a seminal decision on BIPA standing. Section 25C, which is the financial institution exemption that we were just talking about, contains no textual limitation that the institution's biometric practice related to the Graham-Leach-Bliley Act. Rather, it exempts GLBA-regulated institutions, full stop. Section 25E likewise contains no exclusivity or task nexus limitation. And third, there must be a workable, uniform rule. And we saw this play out in Timbs v. Black Horse Carriers, which is the statute of limitations BIPA decision. And there, the Illinois Supreme Court rejected a construction that would create a fractured, unworkable framework. A status-based application of Section 25C and 25E alike yields an administrable line. If the entity fits the exemption at the relevant time, BIPA does not apply to that entity. If not, then it does. So, in short, the judiciary's treatment of Section 25C confirms that Section 25E should be applied at the same level of generality the legislature enacted, which is the entity status controls. And the statute does not invite courts to graft task-specific or employee-specific qualifiers onto that exemption. So, when honoring when as a temporal boundary, it accomplishes two interpretive goals. One, it prevents, and this is what we were just talking about, Justice Bertani, it prevents this over-claiming by entities with no ongoing governmental work, because the exemption attaches only during periods the entity is actually working for the government. And two, it avoids the administrative morass of employee or task-level slicing, which the statute never commands. And again, this is not a free-floating shield. It is a temporal rule that turns on whether the entity is a government contractor at the relevant time. It is faithful to the text and practical in the application. And so one might worry that the status temporal rule is broad, but I'll remind that the breadth is not a defect when the legislature chose it. The balance between privacy protection and the operational realities of government contracting was for the General Assembly to strike. Courts enforced that choice. They do not recalibrate it by adding extra statutory conditions like exclusivity, task nexus, employee segregation, or revenue tracing. And so if there is no further questions, Cornerstone would respectfully ask the court to reach the following conclusions. On the issue of exclusivity, the answer is no. Section 25E contains no exclusivity requirement, and grafting one in would both change the statute's subject and render WEN surplusage. On the meaning of WEN working for, it is temporal status inquiry that asks whether, at or during the time relevant to the claim, the entity is working as a contractor for a state agency or local unit of government. It is not task-by-task or employee-by-employee inquiry. That construction respects the text, comports with the structure of Section 25, aligns with appellate guidance on reading Section 25 exemptions as written, and ensures administrability. And if there's no more questions, I will reserve for rebuttal. Justice Bertani, anything further? I have one. On page 10 of your reply, you quote from the legislative history someone named Ferg Kadima, C-A-D-I-M-A, F-E-R-G hyphen Kadima, from the ALCU. We're indicating that the intent of the act would be to equally exempt as if we are exempting the government, correct? I see that right there, yes. The standard purpose, yes. I mean, isn't the government only exempt? Isn't the government always doing governmental functions? Correct. And there is a specific carve-out in BIPA that setting aside state government contractors, it exempts government from being liable for the capture and collection of biometric information. That is further up in the statute. Obviously, we go back to the language of one working force suggests that there's private entities that do not work for state contracts such that there is this opportunity where they work for both. And so, again, Section 25E certainly contemplates that a private entity can do work for a state contract, but also not do work under state contracts. And the Illinois legislature has not changed the definition of private entity, and this private entity is broadly a private business that does business here in Illinois. Thank you. I have no further. Thank you, Your Honor. Thank you. Thank you. Mr. Pizziri? May it please the Court. I also extend my condolences to Justice Bryant. Thank you. This interlocutory appeal asks a narrow question of statutory construction. Section 25E of BIPA exempts contractors when working for a state agency or local unit of government. That conditional language matters. The appellant in this case is asking this court to convert a narrow conduct or activity-based exemption into a broad status-based immunity that applies to all of an entity's operations. The statute simply does not say that. And this court can answer the certified questions by giving effect to the words the legislature chose and leaving application to the circuit court on remand. At a threshold level, when construing this exemption, this court should keep in mind the grand statutory scheme of BIPA. And that is also in the plaintext of the statute in Section 14.5, where the legislature made clear that the goal is to safeguard this highly sensitive biometric information. More specifically, when this court is asked to construe the government contractor exemption, the goal in construing a statute is to give effect to the intent of the legislature. And the best indication of that intent is the plaintext of the statute. The plaintext of the government contractor exemption is conditional on its face, and it does not support the reading that appellants proffer. It is not a blanket status-based exemption. The plaintext says that the exemption applies to a contractor, and the appellant notably seemingly only focuses on one word in the second certified question. Kept going back to when, when, when. What about the rest of it? When working for, when working for that government agency. The word when introduces a condition that limits the application of the exemption to when the contractor or that entity is working for that state agency or local unit of government. This is a condition based on activity or conduct. It is in the certified question itself. This is not a legal status or an exemption based merely on legal status. If the legislature had intended for this exemption to only be based on legal status, 25E would have just read, nothing in this act shall be construed to apply to a contractor, subcontractor, or agent of a state agency or local unit of government, period. The appellant's proffered reading renders the when working for language superfluous and surplusage, and we know that when it comes to construing statutes, that is not an acceptable way to construe the exemption. Additionally, there's obviously a dearth of authority on this subject. That's one of the reasons why we're before you today, but the Enriquez case is an opposite. In that case, we know that the defendant entity there, Navy Pier Inc., was solely created to carry out a government function of operating Navy Pier. We know, in fact, that that's the only thing that Navy Pier Incorporated did in that case. Appellant also argued in their brief that in that case, there was no mention of exclusivity, and that is simply inaccurate. First, the decision mentions the bylaws of Navy Pier Incorporated, and in those bylaws, the exact language of the bylaws is cited where it says that the entity was created exclusively to operate Navy Pier. Secondly, the exclusivity was so omnipresent in that case that though the word other than the bylaws didn't appear, the opinion absolutely discussed how that was why NPI was formed, and that was the only function that it served. So, I don't think Enriquez is much help to them. Additionally, the Miranda Circuit Court Order, with due respect to that court, that was a conclusory finding. The court did nothing to explain the reasoning of its conclusion there. So, it's of limited value, if any, to us today. Now, even if this court does not side with Appellee's reading of the plain text of the Government Contractor Exemption, at minimum, it's ambiguous, and it's ambiguous because the when working for clause is susceptible to two reasonable interpretations. The fact that the appellant included the second certified question is reflective of that. And as this court knows, when construing a statute, if it's determined that the statute is ambiguous, the court can and should look to extrinsic aides to help construe the statute. The first thing this court should look to in that scenario is the legislative history of BIPA. It shows that this statute and this exemption was never meant to be a status-based exemption. The audio recording of the floor debates that Appellee attached to their brief, when the gentleman working on behalf of the ACLU was speaking and when they were discussing amending BIPA to include the Government Contractor Exemption, specifically said that they were contemplating the exemption, quote, when the entity was, quote, working on behalf of the government agency. Additionally, Section 1430A of the statute, which was repealed shortly after it was passed, reflected that a committee was going to be formed to study the safeguarding of biometric information when the government, quote, required submission of the biometric information. Now, we don't say that these are dispositive pieces of evidence, but when looking to the legislative history in construing an ambiguous statute, these are strong pieces of evidence that this exemption was never meant to be an entity or a status-based exemption. It was conduct-based, activity-based. To further aid construing an ambiguous statute, the canon of statutory construction, expressio unius exclusio alterius, means that if a statute lists X, it implicitly excludes Y. It applies in this scenario because when the legislature said that the Government Contractor Exemption applies specifically when the entity is or the employee is working for that government agency, it's excluding other scenarios, namely the one that appellant proffers, that the exemption applies merely by the status of having a government contract. What if the entity has a government contract that the work doesn't begin for for six months or a year or something along those lines? Additionally, the Absurd Results Doctrine also favors appellee's reading of the exemption. As we put in our brief, and I think Justice Bertani mentioned during his honors questioning of counsel, if there is a security guard company that has a thousand security guards, five of them are placed under a government contract at a government building, the other 995 employees lose the protection of the BIPA statute. And as evidenced by the intent section of the statute, and in this day and age, given technology and given data breaches and privacy issues, that simply could not have been the intent of the legislature in passing the exemption. It's essentially serving as a loophole. Now, counsel said that there were safeguards to prevent this loophole being taken advantage of, but I would bring to the court's attention that all of those safeguards themselves were activity-based. Counsel said that the contract would have to include real performance, and he said that once the government work ends, that's when the protection ends. All of this further shows that this exemption has always been based on activity or conduct, and not mere legal status. In sum, APOE would proffer that this court should answer the first certified question in the affirmative. The exemption does not apply only because a contractor has some government contract work, or just has a contract with a government agency. But it doesn't have to adopt exclusivity as an independent requirement. And this court should answer the second certified question, that the when working for clause means that the exemption applies as an activity-based exemption when the contractor is working for that state agency or local unit of government. And if the court has any questions, I'll be happy to answer them now. Thank you, Justice Bertani. Any questions? No, thank you. Thank you. Thank you, Counsel. Apella? Thank you, Your Honor. Just a few points. And so, Apella argues that Navy Pier was a state contractor. There's no dispute, they were a state contractor. But when you go back and look at the three-prong test that Enriquez set out, nothing there references exclusivity. If the Apella Court wanted to focus on Navy Pier's exclusive state contracts and only being exclusively a state contractor, that would have been part of the test. It wasn't. Furthermore, the phrase when working for a government entity suggests in itself that the when, well, private entities may not be working for state contracts. So there can't be an exclusivity interpretation of that because the when part suggests that they may not be. While Apella argues that Miranda v. Pexco is conclusory because the court never reached an analysis or it was only conclusory, I would absolutely disagree with that because as we've shown that the court had gone through a test which was the temporal question. Was the employee working for the defendant at the time that the claims arose and was that private entity a state contractor? The court went through that analysis. So it's more than conclusory. Again, not binding on this court but consistent with the language of the statute and the position of temporal language. On the issue of ambiguity, Cornerstone does not believe that this language is ambiguous. But if the court were to find ambiguity notwithstanding the text, the legislative backdrop still favors a status temporal reading. When BIPPA was amended, lawmakers removed public agencies from the act scope and then added section 25E to equally exempt private entities working on behalf of government's behalf. Nothing in the adopted text or the debates leading to it imposes an exclusivity condition or limits the exemption to biometric specific tasks. The legislature knew how to write its limits. It chose instead general contractor exemption temporal tethered by when. The other point on the legislative history framing when the House amended the bill to remove public agencies, again, it held that this public private entities when they're working on behalf of a government, it still supports this status-based approach. And then the expressio unias, I'm going to butcher that. It actually supports us. It supports Cornerstone's interpretation. The legislature listed an express exemption for contractors, which was when working for. That cannot be ignored. It did not add exclusively or only for biometric tasks, and we cannot insert omitted limitations. With that, I am done with my rebuttal. Thank you. None. Thank you. Thank you. Thank you, counsel, for your argument. As I indicated earlier, Justice Brennan, we'll be listening to the oral arguments. And at this time, the court will stay in recess. We will be issuing our opinion once he has an opportunity to listen to that, and then the three of us have an opportunity to conference. The court will stand in recess at this time. Thank you, and you'll be escorted out, Justice Brittani, and I will remain. Thank you.